# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| RAYMOND JAMES GREEN, | : | |
| Plaintiff, | : | |
| vs. | : | CA 17-0218-MU |
| NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security, | : | |
| Defendant. | : | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff brings this action, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability and disability insurance benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 24 & 25 ("In accordance with provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.")). Upon consideration of the administrative record, Plaintiff's brief, the Commissioner's brief, and the arguments of counsel at the February 15, 2018 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be affirmed.[1]

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 24 & 25 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.")).

## I. Procedural Background

Plaintiff filed an application for a period of disability and disability insurance benefits on November 6, 2013, alleging disability beginning on August 2, 2011. (*See* Tr. 192-95.)[2] Green's claim was initially denied on June 30, 2014 (Tr. 117) and, following Plaintiff's July 7, 2014 request for a hearing before an Administrative Law Judge ("ALJ") (*see* Tr. 137-38), a hearing was conducted before an ALJ on October 20, 2015 (Tr. 39-75). On March 4, 2016, the ALJ issued a decision finding that the claimant was not disabled and, therefore, not entitled to disability insurance benefits. (Tr. 19-34.) More specifically, the ALJ proceeded to the fifth step of the five-step sequential evaluation process and determined that Green retains the residual functional capacity to perform those light and sedentary jobs identified by the vocational expert ("VE") during the administrative hearing (Tr. 33; *see also* Tr. 24). On April 26, 2016, the Plaintiff appealed the ALJ's unfavorable decision to the Appeals Council (Tr. 15); the Appeals Council denied Green's request for review on March 27, 2017 (Tr. 1-3). Thus, the hearing decision became the final decision of the Commissioner of Social Security.

Given the unique issue raised by Plaintiff in his brief (*see* Doc. 14), which relates to the VE's testimony (*see id.* at 5), the undersigned sets forth the Administrative Law Judge's (ALJ's) relevant step 5 finding, as follows:

> **10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).**

---

[2] According to the ALJ, during the administrative hearing the onset date was amended to December 14, 2011. (*See* Tr. 19.)

In determining whether a successful adjustment to other work can be made, I must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the Medical-Vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the Medical-Vocational rules are used as a framework for decision-making unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decision-making (SSR 85-15).

Through the date last insured, if the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21. However, the claimant's ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, through the date last insured, I asked the vocational expert whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would have been able to perform the requirements of representative occupations such as an information clerk, DOT Code 237.367-018, light and unskilled work (approximately 990,000 jobs in the national economy, 8,000 in Alabama); parking lot attendant, DOT Code 915.473-010, light and unskilled work (approximately 650,000 jobs in the national economy, 5,000 in Alabama); and surveillance system monitor, DOT Code 379.367-010, sedentary and unskilled work (approximately 900,000 jobs in the national economy, 7,000 in Alabama). It is concluded that these represent a significant number of jobs.

Although the vocational expert's testimony includes information outside the scope of the definitions of the jobs contained in the Dictionary of Occupational Titles, there is a reasonable explanation for the expansion. The DOT does not address some of the limitations in the claimant's residual functional capacity assessment, such as alternating between sitting and standing, overhead reaching, off-task behavior, etc. The vocational expert's testimony regarding these limitations and the number of jobs was based in part on his education, 37-years of professional

experience, and training. I find this credible and the explanation for the deviation from the DOT is accepted.

Based on the testimony of the vocational expert, I conclude that, through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

**11. The claimant was not under a disability, as defined in the Social Security Act, at any time from December 14, 2011, the amended alleged onset date, through March 31, 2015, the date last insured (20 CFR 404.1520(g)).**

(Tr. 33-34 (emphasis in original)).

## II. Standard of Review and Claims on Appeal

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation

> to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform h[is] past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Social Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[3] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step, of proving that he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors:

---

[3] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

(1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Although "a claimant bears the burden of demonstrating an inability to return to his past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that he cannot do his past relevant work, as here, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given his age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Phillips, supra,* 357 F.3d at 1237; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that he can perform those light and sedentary jobs identified by the vocational expert during the administrative hearing, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131

(11th Cir. 1986).[4] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'" *Id.* (quoting *Crawford v. Commissioner of Social Sec.*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

On appeal to this Court, Green argues that the Commissioner's decision to deny him benefits is due to be remanded because the ALJ erred in failing to directly address, contrary to agency authority, post-hearing objections to the vocational expert's testimony. (Doc. 14, at 5.) Green contends that, as a claimant, he had a right to challenge the VE's testimony and have his objections ruled upon by the ALJ and, further, that the ALJ's failure to rule on his post-hearing objections was not harmless error. (*See id.* at 5-9.) Green contends that the ALJ's error was not harmless because his post-hearing memorandum and the objections raised therein were valid inasmuch as: (1) the assumed sit/stand limitation is an accommodation the agency cannot rely upon at step 5 to identify jobs the claimant can perform (*id.* at 9-10); and (2) the VE's testimony was generally unreliable. As for the general unreliability of the VE's testimony, Plaintiff makes the following argument:

> Here, Plaintiff raised several valid questions about how the vocational expert arrived at his conclusions regarding job incidence data. Specifically, Plaintiff objected on the basis of the logical inconsistency between the vocational expert saying, on one hand, that he was relying on

---

[4] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

6

his "experience" to offer an estimate regarding the number of employers where the jobs he offered could be found, but then could not name even one such employer. Tr. 242. Moreover, this inability is also inconsistent with his claim that even though he does not know the number of employers, he can still offer an estimate regarding the number of jobs. Tr. 242-43. The objections memorandum also noted the incongruity between the vocational expert's testimony, on one hand, that there are 650,000 light and unskilled parking lot attendants in the national economy (where the employer accommodates the need to alternate between sitting and standing, and does not require more than 4 hours of standing/walking during an 8 hour day) and, on the other, information available through the "County Business Patterns," an administratively noticed resource for vocational information, showing that there are only slightly more than 130,000 parking lot attendants <u>altogether</u> (combined full-time and part-time positions) working in almost 12,000 parking lots across the country.

(*Id.* at 10-11 (footnote omitted; emphasis in original); *see also id.* at 11-12 ("To be clear, this argument is not about 20 C.F.R. § 404.1520's step 5 requirement that an ALJ may only deny benefits if there are a 'significant number[] of jobs' [in] exist[ence] that the claimant can perform despite his RFC and 'vocational factors' of age, education, and prior work experience. Rather, they go to the general reliability of the expert's testimony. The vast incongruity, for instance, between the vocational expert's testimony and the County Business Patterns evidence suggests (but, of course, it would be for the vocational expert to respond to this question if [] appropriately[] asked to do so by the ALJ) suggests, *absent any explanation from the vocational expert himself,* that he was offering job incidents data, and perhaps other testimony, 'conjured out of whole cloth;' such evidence is not 'substantial,' therefore it does not meet the Agency's burden at step 5.")).

Plaintiff's argument that the ALJ erred in failing to address specifically his post-hearing objections to the vocational expert's testimony, contrary to agency authority, is founded on HALLEX § I-2-5-55 (2016), which was operative at the time of the ALJ's

decision. (Doc. 14, at 6.) According to Plaintiff, that section of the HALLEX obligated an ALJ to "'rule on the objection and discuss any ruling in the decision[]'" when a claimant raises objections related to a vocational expert's (VE's) testimony/opinion. (*Id.*)[5] Turning to relevant case law directed to the HALLEX, the undersigned **REJECTS** Plaintiff's argument for several reasons.

Although the Eleventh Circuit has not issued a definitive decision regarding the enforceability of the HALLEX, several of the appellate court's decisions indicate that the provisions of the HALLEX do not carry the force of law, compare *George v. Astrue,* 338 Fed.Appx. 803, 805 (11th Cir. Jul. 8, 2009) ("[E]ven if we assume that § I-2-8-40 of HALLEX carries the force of law—a very big assumption—the ALJ did not violate it[.]") with *McCabe v. Commissioner of Social Sec.,* 661 Fed.Appx. 596, 599 (11th Cir. Sept. 12, 2016) ("This Court has not decided whether HALLEX carries the force of law. . . . Even assuming (without deciding) that HALLEX carries the force of law . . . ."), and a panel of the Eleventh Circuit has determined that another internal document of the Social Security Administration, the Program Operations Manual System ("POMS") "does not have the force of law, and, therefore, the Commissioner's alleged failure to adhere to the POMS does not" signal error or entitlement to benefits, *Wells v. Commissioner of Social Sec.,* 430 Fed.Appx. 785, 786 (11th Cir. Jun. 15, 2011) (per curiam); *see also id.* at 787 ("[B]ecause the POMS does not have the force of law and a violation of the SSA's internal guidelines does not entitle [claimant] to the relief she seeks, we need not

---

[5] Plaintiff parenthetically notes that § I-2-5-55 was later rescinded but that the rule in that HALLEX section was simply restated in § I-2-6-74, "albeit slightly modified, in the sense that the ALJ does not now necessarily have to rule in writing in the decision, but can choose, if possible, to rule on an objection at the hearing[.]" (*Id.* at 6 n.2.)

8

address whether the Commissioner adhered to the POMS."). More importantly, this Court, along with other circuit and district courts, has declined to entertain claims that the Commissioner's alleged violation of a HALLEX provision/procedure constitutes reversible error. *See Brownlow v. Colvin,* 2016 WL 814953, *5 n.7 (S.D. Ala. Feb. 29, 2016) ("HALLEX is an SSA internal manual that 'does not carry the authority of law.' . . . Considering the reasoning of *Wells* and the greater weight of current circuit authority, the Court declines to consider any claim of error in the Commissioner's application of HALLEX."); *compare id. with, e.g., Moore v. Apfel,* 216 F.3d 864, 869 (9th Cir. 2000) ("As HALLEX does not have the force and effect of law, it is not binding on the Commissioner and we will not review allegations of noncompliance with the manual.") and *Hall v. Commissioner of Social Sec.,* 2007 WL 4981325, *10 (M.D. Fla. Feb. 9, 2007) ("HALLEX[,] like all administrative manuals[,] lacks the legal authority to bind the ALJ."). Initially, therefore, this Court need **REJECT** Plaintiff's sole assignment of error because it can find no "purchase" in light of the fact that the HALLEX lacks the force and effect of law and cannot serve as a basis of reversible error on the part of the ALJ.

However, even assuming that the HALLEX has the force of law, Plaintiff is not entitled to a remand in this case because he has shown neither that the ALJ violated § I-2-5-55 (or I-2-6-74) nor has he shown prejudice. *See Carroll v. Social Sec. Admin., Commissioner,* 453 Fed.Appx. 889, 892 (11th Cir. Dec. 12, 2011) (discussing HALLEX and noting that it has "held that an agency's violation of its own governing rules must result in prejudice before [the Eleventh Circuit] will remand to the agency for compliance."); *compare id. with George, supra,* 338 Fed.Appx. at 805 (appellate court found that even assuming HALLEX section carries the force and effect of law, the ALJ

9

did not violate the section) and *Weber v. Commissioner of Social Sec.,* 2017 WL 727765, *3 (M.D. Fla. Feb. 24, 2017) ("'[R]emand is required only if the ALJ violates the procedures in the HALLEX and only if the violation prejudices the claimant.'" (citation omitted)).

Because Plaintiff's argument in his brief centers around the language of HALLEX § I-2-5-55 at the time the ALJ's written decision on March 4, 2016 (*see, e.g.,* Doc. 14, at 6), the undersigned asked Plaintiff to provide that language to the Court (Doc. 19) and Plaintiff complied with this request on January 31, 2018 (Doc. 21, Exhibit 1). At the time of the administrative hearing in this case, HALLEX § I-2-5-55 was entitled "The Vocational Expert's Testimony" and read,[6] in relevant measure, as follows: "All VE testimony must be on the record. . . . **If the claimant raises an objection about a VE's**

---

[6] As pointed out by Plaintiff in his brief (*see* Doc. 14, at 6), the current HALLEX section directed to vocational expert testimony is § I-2-6-74 and reads, in relevant measure, as follows:

> All VE testimony must be on the record. After administering the oath or affirmation, the ALJ must (on the record):
>
> • Ask the VE to confirm his or her impartiality, expertise, and professional qualifications;
>
> • Verify the VE has examined all vocational evidence of record;
>
> • Ask the claimant and the representative whether they have any objection(s) to the VE testifying; and
>
> • Rule on any objection(s). The ALJ may address the objection(s) on the record during the hearing, in narrative form as a separate exhibit, or in the body of his or her decision.

HALLEX § I-2-6-74(B).

***opinion, the ALJ must rule on the objection and discuss any ruling in the decision***." (Doc. 21, Exhibit 1 (emphasis added)). [7]

In light of the plain language of HALLEX § I 2-5-55, as of the date of the hearing decision on March 4, 2016, Plaintiff has not and cannot establish a violation of § I-2-5-55 because that HALLEX provision did not make any mention of post-hearing objections to VE testimony, particularly by a representative different from Plaintiff's representative at the administrative hearing, and certainly did not mandate that the ALJ rule on such post-hearing objections; rather, the just-quoted language can only be read as mandating that the ALJ rule on objections to the VE's opinion raised on the record during the administrative hearing,[8] and thus cannot fairly be the basis of error on the part of the ALJ in this case in failing to rule on the post-hearing objections. In other words, Plaintiff has not shown that the ALJ violated HALLEX § I-2-5-55 when she did not address post-hearing objections to the VE's testimony, as this procedure, in the undersigned's opinion, was not mandated by § I-2-5-55, and Plaintiff has cited to no case law establishing that, at the time of the administrative hearing in this case (or prior thereto), an ALJ was required to address post-hearing objections where no objections

---

[7] HALLEX § I-2-5-55, which was last updated on June 16, 2016, was not actually rescinded as Plaintiff suggests (*see* Doc. 14, at 6 n.2) but, instead, was reduced in scope, and now reads, in relevant measure, as follows: "When an administrative law judge (ALJ) obtains a vocational expert (VE) opinion during a hearing, the ALJ will generally explain why the VE is present before his or her opening statement." *Id.*; *compare id. with* Doc. 21, Exhibit 1 ("During the opening statement, the ALJ must explain why VE testimony is necessary."). Obviously, nothing about the current HALLEX § I-2-5-55 mandates that the ALJ address objections to the VE "as it only circumscribes a general rule for obtaining vocational expert opinion at the hearing." *Weber, supra,* at *3.

[8] It is clear that an objection was to be made on the record during the administrative hearing inasmuch as the pertinent language mandates that the ALJ rule on the objection (obviously, at the hearing) and then, thereafter, discuss any ruling (that was made on the record at the hearing) in the written decision.

11

were made on the record during the administrative hearing (*see* Doc. 14, at 5-9 & 13 n.9[9]). Accordingly, the Court finds that the ALJ in this case did not violate HALLEX § I-2-5-55.

Finally, even assuming HALLEX § I-2-5-55 has the force and effect of law and that the ALJ violated it in failing to rule on Green's post-hearing objections, Plaintiff's argument still fails because he has not established that he was prejudiced by the ALJ's failure to rule on his post-hearing objections. Green contends that he raised facially valid objections to the VE's testimony, namely: (1) the hypothetical assumption that the individual would need to alternate between sitting and standing, and upon which the VE's testimony is founded, describes "'accommodated work' the Agency is not permitted to rely upon to deny benefits at step 5[]" (Doc. 14, at 9-10); and (2) the VE's testimony was generally unreliable with respect to job incidence data (*id.* at 10-12).

The sit/stand "prejudice" argument is due to be **REJECTED** not simply because Plaintiff has cited no case law recognizing that a sit/stand option is accommodated work that cannot be considered in making a disability determination (*see* Doc. 14, at 9-10),[10]

---

[9] Plaintiff has conceded (*see id.*), and it is plain from the record of the hearing (Tr. 65-74), that he interposed no objections on the record directed to the VE's testimony during the administrative hearing (*see id.*). And any suggestion by Plaintiff that he was somehow "surprised" by the VE's testimony at the hearing and should not be expected to raise objections during the hearing (as opposed to post-hearing) simply ignores both the record evidence that he was informed on August 20, 2015 (Tr. 146-152 & 153-159), some two months before his October 20, 2015 hearing (*see* Tr. 43), that a vocational expert would be testifying at his administrative hearing (*see, e.g.,* Tr. 149 ("A vocational expert will testify at your hearing.")) and the plethora of cases in which objections are interposed to expert testimony during the administrative hearing, *see, e.g., Sams, infra.*

[10] Indeed, this Court agrees with the United States District Court for the Northern District of Indiana that "[t]he fact that a sit/stand opinion is a 'special situation' that requires the testimony of a VE . . . does not make it an 'accommodation' within the meaning of the ADA." *Sawyer v. Colvin,* 2013 WL 5320356, *4 (Sept. 23, 2013).

12

but primarily because the Eleventh Circuit has time and again affirmed the fifth-step denial of benefits based upon a VE's testimony (as here) that the hypothetical claimant, restricted to light (or less) jobs allowing a sit/stand option, could perform work existing in significant numbers in the national economy. *Compare, e.g., Herron v. Social Sec. Admin., Commissioner,* 649 Fed.Appx. 781, 787 (11th Cir. May 6, 2016) (in affirming the denial of SSI benefits, the court determined that "[s]ubstantial evidence [] supports the ALJ's determination that despite her physical impairments, Herron retained the RFC to perform light work with a **sit/stand option**." (emphasis supplied)) *with Williams v. Barnhart,* 140 Fed.Appx. 932, 937 (11th Cir. Aug. 15, 2005) (in affirming the denial of an application for disability insurance benefits, the court made the following observations: "Although the ALJ failed to specify the frequency that Williams needed to change his sit/stand position, the reasonable implication of the ALJ's description was that the sit/stand option would be at Williams's own volition. This implication satisfies Williams's needs. In addition, Williams failed to offer any evidence that he could not perform the unskilled jobs identified by the vocational expert based on his ability to sit or stand for any period of time. This failure prohibits Williams from establishing his burden of his inability to perform the identified jobs."). Thus, Plaintiff was not prejudiced by the ALJ's failure to address this non-meritorious objection.

Plaintiff also contends that the VE's testimony was generally unreliable with respect to job incidence data:

> Specifically, Plaintiff objected on the basis of the logical inconsistency between the vocational expert saying, on one hand, that he was relying on his "experience" to offer an estimate regarding the number of employers where the jobs he offered could be found, but then could not name even one such employer. Tr. 242. Moreover, this inability is also inconsistent with his claim that even though he does not know the number of

13

employers, he can still offer an estimate regarding the number of jobs. Tr. 242-43. The objections memorandum also noted the incongruity between the vocational expert's testimony, on one hand, that there are 650,000 light and unskilled parking lot attendants in the national economy (where the employer accommodates the need to alternate between sitting and standing, and does not require more than 4 hours of standing/walking during an 8 hour day) and, on the other, information available through the "County Business Patterns," an administratively noticed resource for vocational information, showing that there are only slightly more than 130,000 parking lot attendants <u>altogether</u> (combined full-time and part-time positions) working in almost 12,000 parking lots across the country.

(*Id.* at 10-11 (footnote omitted; emphasis in original); *see also id.* at 11-12 ("To be clear, this argument is not about 20 C.F.R. § 404.1520's step 5 requirement that an ALJ may only deny benefits if there are a 'significant number[] of jobs' [in] exist[ence] that the claimant can perform despite his RFC and 'vocational factors' of age, education, and prior work experience. Rather, they go to the general reliability of the expert's testimony. The vast incongruity, for instance, between the vocational expert's testimony and the County Business Patterns evidence suggests (but, of course, it would be for the vocational expert to respond to this question if [] appropriately[] asked to do so by the ALJ) suggests, *absent any explanation from the vocational expert himself,* that he was offering job incidents data, and perhaps other testimony, 'conjured out of whole cloth;' such evidence is not 'substantial,' therefore it does not meet the Agency's burden at step 5."")).[11]

Plaintiff's contention that he validly "objected on the basis of the logical inconsistency between the vocational expert saying, on one hand, that he was relying

---

[11] While these post-hearing objections, raised on November 19, 2015 (*see* Tr. 242-242-46), may serve as a basis for Plaintiff to establish how he was prejudiced, the same cannot be said for Plaintiff's counsel's comments in footnotes 7 and 8 of Green's brief (*see* Doc. 14, at 11 n.7 & 12 n.8); therefore, the contents of these footnotes are not addressed herein.

upon his 'experience'[12] to offer an estimate regarding the number of **employers** where the jobs he offered could be found, but then could not name even one such employer[]" (Doc. 14, at 10-11 (emphasis supplied; footnote added)) is a facially deficient argument both because the VE offered no testimony regarding the number of **employers**, only the number of jobs (*see* Tr. 69-70 (identifying the number of jobs in the national and state economies, not the number of employers)), as is required,[13] nor was the VE asked to name a single employer (*see* Tr. 73 ("Q You gave me a number of positions, but I'm asking how many different **employers**. A I don't have that kind of information. I can . . . give you an estimate on national, regional, and state jobs, but as far as having an **employer list**, that's an impossible thing to do." (emphasis supplied))); thus, Plaintiff has no basis to argue that the VE's testimony was "logically inconsistent" and certainly cannot establish that he was somehow prejudiced by the ALJ's failure to specifically rule on this unfounded/deficient objection. And because the VE was not asked, nor did he specifically refuse, to name only a single employer (rather, as aforesaid, he was asked for a list of employers which he said was an impossible task), Plaintiff lacks any foundation to make the further "objection" that "this inability [that is, the purported inability to name a single employer] is also inconsistent with his claim that even though

---

[12] The undersigned parenthetically notes that a VE's recognized expertise, experience, and knowledge provides the necessary foundation for his testimony; no additional foundation is required. *See Leonard v. Commissioner of Social Sec.,* 409 Fed.Appx. 298, 301 (11th Cir. Jan. 19, 2011).

[13] The Commissioner's regulations specifically provide "that work exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions of the country[]" and, further, that "[w]ork exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [the claimant can] . . . meet with [his] physical or mental abilities and vocational qualifications." 20 C.F.R. § 404.1566(a) & (b) (2017). Thus, the Commissioner's regulations address themselves solely to the number of "jobs" not the number of "employers."

he does not know the number of employers, he can still offer an estimate regarding the number of jobs." (Doc. 14, at 11).

Indeed, the undersigned discerns no such inconsistency because it is not, and has never been, the Commissioner's burden (through use of a VE's testimony, or otherwise) to identify the number of employers (of certain job descriptions/occupations) in the national economy but, rather, only the number of jobs—in one or more occupations—in existence in the national economy,[14] *compare* 20 C.F.R. § 404.1566(a) & (b), *supra with, e.g., Atha v. Commissioner, Social Sec. Admin.,* 616 Fed.Appx. 931, 933-34 & 934 (11th Cir. Jun. 26, 2015) ("[A] person is not disabled unless he cannot engage in any other kind of substantial gainful work which exists in the national economy, ***regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work***. These provisions make clear that work which exists in the national economy means work which exists in significant numbers *either* in the region where such individual lives *or* in several regions of the country. Likewise, the implementing regulations state that work exists in the national economy when the work exists in significant numbers either in the region where the claimant lives or in several other regions of the country. ***The regulations clarify that it does not matter whether work exists in the immediate area in which the claimant lives, whether a specific job vacancy exists, or if the claimant would be hired if he applied for work***. Thus, a

---

[14] To the extent the VE in this case relied, in part, on the DOT to provide employment data, "the DOT is an acceptable source to provide this information." *Williams v. Commissioner of Social Sec.,* 2017 WL 2115985, *9 (M.D. Fla. May 16, 2017), *appeal dismissed,* 2017 WL 4877285 (11th Cir. Sept. 1, 2017).

claimant is considered not disabled if he remains unemployed because of lack of work in his local area." (internal quotation marks, citations, brackets and ellipses omitted; some emphasis added)); and *Brooks v. Barnhart,* 133 Fed.Appx. 669, 670 (11th Cir. Jun. 1, 2005) ("Work exists in the national economy when it exists in significant numbers either in the region where the claimant lives or in several other regions of the country. The ALJ, relying on the VE's testimony, and not the VE, determines whether a specific number of jobs constitutes a significant number." (citations mitted)); therefore, it was inherently reasonable, predictable, and certainly not inconsistent for the VE to provide testimony based upon a "comprehensive list of . . . jobs" (Tr. 71), and not a list of employers (*id.* at 73), particularly since it matters not whether work exists in the immediate area in which the claimant lives or whether a job vacancy exists, 20 C.F.R. § 404.1566(a) & (b). *Cf. Pena v. Commissioner of Social Sec.,* 489 Fed.Appx. 401, 402 (11th Cir. Sept. 12, 2012) (finding that when a VE testifies about the availability of jobs "statistical specificity is not required.") Accordingly, the undersigned is unable to discern how Plaintiff was prejudiced by the ALJ's failure to address objections that have no direct bearing on the reliability of the VE's testimony relative to the penultimate issue of whether work (that is, jobs, not employers) exists in the national economy that Green was capable of performing in light of his impairments and limitations.

Finally, Plaintiff contends that the ALJ should have addressed his post-hearing objection to the vast incongruity between the VE's testimony that there are 650,000 light, unskilled parking lot attendant jobs in the national economy that allow for a sit/stand option, and information available through the "County Business Patterns" that there are only slightly more than 130,000 parking lot attendants altogether (fulltime and

17

part-time positions) working in 12,000 parking lots across the country, because this objection suggests that the VE's testimony in this regard was "'conjured out of whole cloth[]'" (Doc. 14, at 12; *see also id.* at 11) and, therefore, does not constitute substantial evidence to meet the Commissioner's burden at step 5 (*id.* at 12). The problem with Plaintiff's argument in this regard, and the source of Plaintiff's inability to establish prejudice, is that it is addressed solely to the number of parking lot attendant jobs in the national economy (*compare id.* at 11-12 *with* Tr. 243-44), and does not include within its scope the VE's testimony regarding the numbers of information clerk jobs and surveillance system monitor jobs in the national economy and in the State of Alabama (*compare id. with* Tr. 69 & 70); therefore, Green cannot establish that he was prejudiced by the ALJ's failure to address his post-hearing objection to the incongruity between the VE's hearing testimony and the County Business Patterns relative to the numbers of parking lot attendant jobs, given that any error with respect to parking lot attendant jobs would be harmless since the information clerk and surveillance system monitor jobs identified by the VE support the ALJ's finding that there are a significant number of jobs in the national economy that Green can perform, *compare, e.g., Hamblin v. Astrue,* 2012 WL 3670226, *4 (M.D. Fla. Aug. 24, 2012) ("[E]ven if there had been an error with respect to the jobs of order clerk and reception clerk, that error would be harmless since the sorter job alone supports the law judge's finding that there are jobs in significant numbers in the national economy that the plaintiff can perform.") *with Barchard v. Commissioner of Social Sec.,* 628 Fed.Appx. 685, 686 & 687 (11th Cir. Oct. 14, 2015) (affirmance of the denial of benefits where, based on the VE's testimony that 1,100 information clerk positions existed in Plaintiff's local area, 7,300 statewide, and

97,000 nationally, the ALJ determined that a significant number of information clerk jobs exist in the national economy); and *Robinson v. Colvin,* 2015 WL 1520431, *14 (S.D. Ala. Apr. 2, 2015) ("Here, the VE testified, and the ALJ accepted, that there [were] 66,000 carding machine operator jobs in the national economy, 1,000 of which were in the regional economy. This constitutes a significant number of available jobs; thus, any erroneous reliance by the ALJ on the other two positions listed by the VE was harmless.").[15]

In light of the foregoing, this Court **REJECTS** Plaintiff's sole assignment of error (*see* Doc. 14, at 5 (averring that the ALJ erred in failing to address, contrary to agency authority, post-hearing objections to the VE's testimony, and the error was not harmless)) because: (1) the HALLEX (in particular, § I-2-5-55) lacks the force and effect of law and cannot serve as a basis of reversible error on the part of the ALJ; (2) even assuming HALLEX § I-2-5-55 has the force and effect of law, the ALJ did not violate § I-2-5-55; and (3) even assuming HALLEX § I-2-5-55 has the force and effect of law and that the ALJ violated it, Plaintiff has not established that he was prejudiced by

---

[15] This case is unlike *Sams v. Berryhill,* 2017 WL 3974239 (N.D. Fla. Sept. 8, 2017) for several reasons. First, the post-hearing objections made by the Plaintiff in *Sams* constituted an extensive and detailed follow-up to the Plaintiff's initial objection, raised at the hearing, to the VE's testimony, *see id.*, whereas in this case Green's "parking lot attendant incongruity" post-hearing objection does not "echo" any objection initially made by Plaintiff at his administrative hearing, as the Plaintiff concededly made no objections to the VE's testimony during the administrative hearing (*compare* Doc. 14, at 13 n.9 *with* Tr. 65-74). Just as important, in *Sams*, the court determined that the ALJ should have ruled in the decision on the aforementioned post-hearing objections filed by Plaintiff because "the reliability of the testimony concerning the DOT job descriptions of document preparer, addresser, and cutter and paster, all with a SVP of 2 (unskilled), and the reliability of evidence that these jobs exist in significant numbers in the current national economy," was "shown to be questionable," *id.* at *8; here, however, since the reliability of evidence that the jobs of information clerk and surveillance system monitor has not been shown to be questionable, the Plaintiff's attack being solely directed to the numbers of parking lot attendant jobs, *Sams* is not controlling.

the ALJ's failure to consider his post-hearing objections to the VE's testimony. There being no other claims of error asserted,[16] the Court finds that the Commissioner's final decision denying Green a period of disability and disability insurance benefits is due to be affirmed.

## **CONCLUSION**

In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be affirmed.

**DONE** and **ORDERED** this the 12th day of March, 2018.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**

---

[16] Indeed, Plaintiff "assumed" in his brief that "the ALJ's RFC finding is legally sufficient and supported by substantial evidence[.]" (Doc. 14, at 5.)